STATE BOARD FOR ELEMENTARY AND SECONDARY EDUCATION, Samuel Robinson, Wade Mountz, Helen Mountjoy, Audrey Tayse Haynes, Thomas Gish, Jane Joplin–Evans, Gary Cox, Joseph W. Kelly, and Dr. Thomas C. Boysen, Appellants,

v.

Ronnie G. BALL, Benny Dale Coleman and David Lewis, Appellees.

Nos. 92–SC–439–T, 92–SC–550–T.

Supreme Court of Kentucky.

Feb. 18, 1993.

Robert E. Stopher, Boehl, Stopher, Graves & Deindoerfer, Louisville, Stephen D. Wolnitzek, Smith, Wolnitzek, Schachter & Rowekamp, P.S.C., Covington, Kevin M. Noland, Kentucky Dept. of Educ., Frankfort, for appellants.

Robert L. Chenoweth, John C. Fogle, III, Frankfort, for appellees.

STEPHENS, Chief Justice.

The issue presented by this case is whether the State Board for Elementary and Secondary Education (hereinafter State Board), under the Kentucky Education Reform Act (hereinafter KERA), has the authority to remove members from a county board of education for misconduct in office. If it is determined that the State Board has such authority, we must then determine whether the evidence in this case supports a judgment of removal by the State Board.

Ronnie G. Ball, Benny Dale Coleman and David Lewis were members of the Harlan County Board of Education. In November 1991, Dr. Thomas C. Boysen, Kentucky's chief state school officer, recommended the removal of Ball, Coleman and Lewis from the Harlan County Board of Education for their alleged misconduct in office. After

they waived the right to a summary suspension hearing, a removal hearing was set for January 13, 1992. After four days of lengthy hearings, the State Board unanimously voted to remove Ball, Coleman and Lewis from the Harlan County Board of Education, effective immediately.

The removal of Ball, Coleman and Lewis left only two members remaining on the Harlan County Board. Because three members are required for a quorum, the State Board, pursuant to KRS 156.070(1), voted to accept the day-to-day responsibilities for the Harlan County Schools.

Ball, Coleman and Lewis appealed their removal to the Harlan Circuit Court. KRS 156.132(8). On May 28, 1992, Harlan Circuit Judge Ron Johnson entered a "Final Order and Decision" in which he rendered a decision in favor of Ball, Coleman and Lewis.

The State Board sought emergency and intermediate relief in the Court of Appeals. On June 4, 1992, the Court of Appeals granted intermediate relief holding that interim management and control remained vested in the State Board.

On June 2, 1992, the Harlan Circuit Court entered an "Amended Final Order and Decision" and "Order" correcting typographical errors in the first Order. The State Board filed a second notice of appeal regarding these orders. The second appeal was transferred to this Court and consolidated with the State Board's original appeal.

## I. DOES THE STATE BOARD HAVE THE AUTHORITY TO REMOVE DISTRICT BOARD MEMBERS FOR MISCONDUCT?

■ Among other charges, the State Board charged Ball and Coleman with violating KRS 160.180(2)(g) and (3). The relevant portions of KRS 160.180 state:

(2) No person shall be eligible to membership on a board of education: (g) Who, at the time of his election, is directly or indirectly interested in the sale to the board of books, stationery, or any other property, materials, supplies, equipment, or services for which school funds are expended; or

(3) If, after the election of any member of the board, he becomes interested in any contract with or claims against the board, of the kind mentioned in paragraph (g) of subsection (2) of this section, ... he shall be subject to removal from office pursuant to KRS 415.050 and 415.060.

KRS 415.050 states:

For usurpation of other than county offices or franchises, the action by the Commonwealth shall be instituted and prosecuted by the Attorney General.

KRS 415.060 states:

A person who continues to exercise an office after having committed an act, or omitted to do an act, the commission or omission of which, by law, creates a forfeiture of his office, may be proceeded against for usurpation thereof.

Appellees argue, and the trial court agreed, that the State Board lacked jurisdiction to determine violations of KRS 160.180. It is appellees' contention that the "exclusive enforcement apparatus" contained in KRS 160.180 is an action instituted and prosecuted solely by the Attorney General.

Appellees' argument is without merit. The State Board is authorized under KERA to remove district board members pursuant to KRS 156.132. KRS 156.132 provides, in relevant part:

(2) *The chief state school officer shall recommend by written charges the suspension by the State Board for Elementary and Secondary Education of any district board member, superintendent of schools, or other public school officer as to whom he has reason to believe is guilty of immorality, misconduct in office, incompetency, willful neglect of duty, nonfeasance, or who shall be removed pursuant to KRS 158.6455(7).* The State Board for Elementary and Secondary Education shall, after a summary hearing as provided by administrative regulations, suspend any district board of education member, superintendent of schools, or other public school officer,

who in the opinion of the majority of the State Board for Elementary and Secondary Education is guilty of immorality, misconduct in office, incompetence, willful neglect of duty, nonfeasance, or who shall be removed pursuant to KRS 158.-6455(7). The action by the State Board for Elementary and Secondary Education may be taken upon a recommendation of the chief state school officer, or the action may be taken by a majority vote of the State Board for Elementary and Secondary Education without recommendation from the chief state school officer.

(6) Upon receipt of the officer's notice of intention to appear and answer the charges, the State Board for Elementary and Secondary Education shall issue subpoenas necessary for the determination of the issues involved. The issues shall be heard at the time and place set and the hearing shall be public or private at the discretion of the accused former or current superintendent and shall be public when testimony is taken for board members. Both parties may be represented by counsel and may require the presence of witnesses upon subpoena. Each witness shall be required to take oath before an officer of the board. The State Board for Elementary and Secondary Education shall provide for a stenographic report of the proceedings and furnish the officer with a copy.

(7) Upon completion of both sides of the case, but within ninety (90) days from the date the officer was suspended if applicable, *the State Board for Elementary and Secondary Education may meet in closed session to consider the evidence and may by a majority vote remove the officer.* If the board votes to remove the officer, the board shall prepare written findings specifying which charge or charges it found to be the basis for removal. If within ninety (90) days from the date of suspension if applicable, the state board has not removed the officer, or has dismissed the charges, the suspended officer shall be reinstated and shall be paid his full salary for the period of suspension. (Emphasis added.)

Clearly, KRS 156.132 authorizes the State Board to remove district board members for misconduct in office.

In *Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186, 211 (1989) this Court stated that:

> [t]he General Assembly must not only establish the system [of common schools], but it must monitor it on a continuing basis so that it will always be maintained in a constitutional manner. The General Assembly must carefully supervise it, so that there is no waste, no duplication, no mismanagement, at any level.

It has long been held that while the General Assembly cannot delegate its power to make laws, it can lawfully delegate the power to exercise administrative discretion in applying laws enacted by the General Assembly. *Bloemer v. Turner*, Ky., 137 S.W.2d 387 (1940). In KRS 156.132, the General Assembly chose to delegate the supervision of the system of common schools, including the power to remove public school officers for misconduct in office, to the State Board.

KRS 160.180, KRS 415.050 and KRS 415.060 do not divest the State Board of the authority to remove district board members for misconduct in office. The removal power granted to the State Board by KRS 156.132 does not conflict with the provision in KRS 415.050 empowering the Attorney General to institute and prosecute removal actions in circuit court, but is in addition to this power.

Removal proceedings against district board members have traditionally been initiated by either the chief state school officer or the Attorney General. *Hogan v. Kentucky State Board of Education*, Ky., 329 S.W.2d 563 (1958). Removal proceedings for violations of KRS 160.180 are no different. In considering a predecessor to the current KRS 156.132, the Court in *Kentucky State Board of Education v. Isenberg*, Ky., 421 S.W.2d 81, 84 (1967) stated that "[u]nquestionably the State Board has a right under KRS 156.132 and 156.134 to suspend and remove county board mem-

bers for misconduct in office or for wilful neglect of duty."

There is no language in either KRS 156.132 or KRS 160.180 which suggests, let alone mandates, that the Attorney General has the exclusive power to remove district board members for violations of KRS 160.180. The language in the two statutes clearly indicates that the General Assembly intended two separate and alternative mechanisms for the removal of district board members.

## II. WAS SUFFICIENT EVIDENCE PRESENTED TO SUPPORT A JUDGMENT OF REMOVAL?

 Because we have found that the State Board does have the power under KERA to remove district board members for misconduct in office, we must now determine whether the evidence in this case supports a judgment of removal by the State Board.

At the conclusion of the January, 1992, removal hearing the State Board voted unanimously to remove Ball, Coleman and Lewis from the Harlan County Board of Education. The State Board found violations in five areas:

(1) Unapproved awarding of a construction contract for the Cawood High School Field House;

(2) Improper contracting to purchase gasoline storage tanks without first obtaining advertised, public and competitive bids;

(3) Improper credits for Coleman's business from Progress Paint Company based upon the purchase of paint by the Harlan County Board of Education;

(4) Improper purchase of weight-lifting equipment which was transferred to the Harlan County Board through an employee of Coleman; and

(5) Improper contracting to purchase school equipment from a company owned by Ball's brother without either advertised, public and competitive bids or proper certification of an emergency.

### A. Evidence Against Ball, Coleman and Lewis

The State Board unanimously found that Ball, Coleman and Lewis caused a construction contract to be awarded and permitted the Cawood High School Field House to be occupied without the required prior approval of the chief state school officer, Dr. Boysen.

KRS 162.060 states that:

[t]he chief state school officer shall be furnished a copy of all plans and specifications for new public school buildings contemplated by boards of education and for all additions to or alterations of old buildings. He shall examine or cause to be examined all such plans and specifications and shall approve or disapprove them in accordance with the rules and regulations of the State Board for Elementary and Secondary Education.... *No board of education may award a contract for the erection of a new building* or contract for an addition to or alteration of an old building *until the plan has been approved by the chief state school officer.* (Emphasis added.)

In January, 1991, the State Department of Education issued a letter of conditional approval for the construction of a new field house at Cawood High School in Harlan County. The approval was conditioned upon the submission of revised plans by the Harlan County Board of Education. In July, 1991, the State Department of Education found the field house to be completed and occupied. At this time no plans or documents had been submitted to the State Department of Education. On August 29, 1991, the required documentation was finally submitted to the chief state school officer. While Dr. Boysen approved occupancy of the field house on August 30, 1991, he noted that the Harlan County Board's failure to obtain prior approval would be reserved for a later decision.

Ball began service for the Harlan County Board of Education in January, 1989. Coleman began in January, 1983, and Lewis began in January, 1985. All three had been involved as school board members in numerous prior building projects in which

the law had been correctly followed. Ball, Coleman and Lewis all voted to award the construction contract of the field house despite failure to obtain the required approval of the chief state school officer.

The second charge against all three of the appellees involves the purchase of gasoline storage tanks by the Harlan County Board in September, 1989.

KRS 160.160(2) provides that:

(2) No board of education shall participate in any financing of school buildings, school improvements, appurtenances thereto, or furnishing and equipment, including education technology equipment without:

(a) First establishing the cost of the project in advance of financing, based on the receipt of *advertised, public, and competitive bids* for such project, in accordance with KRS Chapter 424; and

(b) Establishing the cost of financing in advance of the sale of any bonds, certificates of participation in any leases, or other evidences of financial commitments issued by or on behalf of such board. Any bonds, leases, participations, or other financial arrangements shall not involve a final commitment of the board until the purchaser or lender involved shall have been determined by public advertising in accordance with KRS Chapter 424. (Emphasis added.)

The language of KRS 424.260, from 1982 until its amendment in 1990, prohibited a district board of education from making a contract for materials or equipment involving an expenditure of more than seven thousand five hundred dollars ($7,500) without first either publicly advertising for bids or certifying an emergency.

In September, 1989, all three appellees, along with other Harlan County Board members, voted and authorized the Harlan County School administration to purchase five gasoline storage tanks from Richards Oil Company for a total expenditure of seventeen thousand nine hundred forty-three dollars and thirty cents ($17,943.30). The Harlan County Board agreed to pay for the gasoline storage tanks in five annual installments to begin September 1, 1989.

Richards Oil Company later requested that the payments be accelerated. On October 12, 1990, the Harlan County Board issued a check to Richards Oil Company in the amount of fourteen thousand three hundred twenty-nine dollars and sixty-four cents ($14,329.64) for payment in full. No advertised, public and competitive bids were sought as required by KRS 160.160(2) and KRS 424.260 before the contract was awarded to Richards Oil Company; nor was an emergency ever certified.

B. Evidence Against Coleman

The two charges brought by the State Board against Coleman independently both involve Coleman's profiting from selling products or services to the local school board in violation of KRS 160.180(2)(g) and (3). The first charge pertains to sales of paint to the Harlan County Board. The evidence presented by the State Board is as follows: Coleman operates a building and home supply store in Harlan in which he has sold paint manufactured by Progress Paint Company. Before Coleman's election to the Harlan County Board, Progress Paint was sold to the Harlan County Board through Coleman's Building and Home Supply. Upon his election to the Harlan County Board, Coleman ceased selling paint and other materials to the Harlan County Board.

At some later point Coleman introduced a Progress Paint sales representative to the Harlan County Board's assistant maintenance director who routinely purchased paint and other supplies for the Harlan County schools. This meeting, and all subsequent such meetings, occurred in Coleman's Building and Home Supply. Subsequent to the meeting between the Progress Paint sales representative and the assistant maintenance director, the Harlan County Board resumed its purchasing of Progress Paint.

Coleman received monthly statements from Progress Paint in November, 1990, and in March, 1991, which indicated that he had received credits totalling over thirty-four hundred dollars ($3,400) from Progress Paint for services rendered to Prog-

ress Paint in assisting it in obtaining business with the Harlan County Board and for mixing colorant in the paint when needed. Coleman testified that in March, 1991, he called the Progress Paint sales representative and asked that the credits to Coleman be stopped. However, Coleman never asked the sales representative to rescind the two prior credits.

Evidence of the second charge against Coleman concerns the Harlan County Board's purchase of weight-lifting equipment. Coleman owned some commercial weight-lifting equipment which had been used in a health spa he had previously operated. Finding no ready market for the weight-lifting equipment, Coleman "gave" the equipment to an employee, Donald Turner. The "gift" was in return for the cancellation of several thousands of dollars of back wages and overtime pay Coleman owed Turner.

In March, 1991, Turner approached Robert Shepherd, the Superintendent of Harlan County Schools at that time, regarding the sale of the weight-lifting equipment to the Harlan County Board. Coleman assisted Turner in pricing the equipment, with a twenty percent (20%) discount, so that the amount would be less than the ten thousand dollar ($10,000) bid limit.[1] The Harlan County Board purchased the equipment from Turner for the sum of nine thousand eight hundred twenty-two dollars ($9,822). Even though the weight-lifting equipment was purchased from Turner, the equipment remained in Coleman's control in his warehouse nearly one and one-half years after Coleman "gave" it to Turner, and approximately five months after the Harlan County Board purchased it.

KRS 160.180(2)(g) and (3) provides, in pertinent part, that if a board member has a direct or indirect interest in the sale of supplies or equipment to the board, he shall be subject to removal. The evidence against Coleman is that he profited from the sale of paint and the sale of weight-

lifting equipment to the Harlan County Board.

#### C. Evidence Against Ball

The State Board charged Ball individually with violating KRS 160.160(2) and KRS 424.260 by unlawfully assisting his brother, who owns Lexington Office Equipment, in obtaining a no-bid contract for classroom and office furniture from the Harlan County Board.

To reiterate, KRS 424.260 requires a district school board to advertise for bids before making an expenditure of more than ten thousand dollars ($10,000), unless an emergency is certified to exist. In October, 1990, the Harlan County Board paid Lexington Office Equipment twelve thousand one hundred sixty-eight dollars and eighty-five cents ($12,168.85) for desks and other equipment purchased. The Harlan County Board did not receive bids before purchasing from Lexington Office Equipment.

Ball testified at the removal hearing that the check to Lexington Office Equipment was for two separate invoices which were less than ten thousand dollars ($10,000) each. However, the two invoices did not equal the two quotes Ball introduced to show that two separate purchases were made. On August 8, 1991, Ball made a motion at a Harlan County Board meeting that an emergency be declared so that the furniture could be sold with there being no requirement of competitive bidding. However, it should be noted that: (1) the chief executive officer of the district had not certified that an emergency existed which would permit a non-bid purchase; and (2) while Ball testified that the emergency was at Black Mountain Elementary School, the check to Lexington Office Equipment indicated that it was payment for "equipment for Wallins" Elementary School.

#### D. Analysis of the Opinion of the Trial Judge

The trial judge ordered that each appellee be restored to the full power, obli-

---

1. The amended KRS 424.260 prohibits a district board from making an expenditure for materials or equipment in excess of ten thousand dollars ($10,000) without first advertising for bids or certifying an emergency.

gations and entitlements of his office as a Harlan County School Board member. As to the charge levied against Ball, Coleman and Lewis in regard to the field house, the trial judge reversed the State Board's finding of guilt. The lower court found "no evidence of any willful, knowing, calculated or arrogant disregard and disrespect for the local Board's obligations under KRS 162.160." Instead, the trial judge classified the construction and occupation of the field house without the prior approval that KRS 162.160 requires as "a shocked and embarrassed realization by the local [school board] officials that someone had fumbled the ball." The failure to abide by KRS 162.160 was characterized by the trial judge as merely a "break down in communication."

As to the charge against Ball, Coleman and Lewis concerning the gasoline storage tanks, again the lower court found insufficient evidence of willful, knowing and calculated misconduct. The lower court so found in light of the fact that the "Board members readily admit that the last four payments should not have been paid in one installment" and that the combination of the payments was a "technical departure from the requirements of KRS 424.260." The trial judge explains away this concession by relying on such mitigating factors as: (1) Ball, Coleman and Lewis were merely lay persons; (2) advice from counsel (even though the advice from counsel was not in regard to the bidding statutes); and (3) good faith of Ball, Coleman and Lewis.

The two charges against Coleman individually were remanded to the State Board for determination of whether to refer the charges to the Office of the Attorney General. The lower court found that the State Board lacked jurisdiction to hear the charges and that any charges for violations of KRS 160.180 must be prosecuted by the Attorney General's office.

As to the State Board's charge against Ball regarding the payment of over twelve thousand dollars ($12,000) to Lexington Office Equipment, the lower court again reversed the State Board's finding of guilt. The trial judge characterized it as "unfortunate" that the check issued to Lexington Office Supply for twelve thousand one hundred sixty-eight dollars and twenty-five cents ($12,168.25) referred to only one invoice for Harlan County School purchases.

■ When one reads the opinion of the trial judge, one must wonder who was on trial—Ball, Coleman and Lewis or the State Board.[2] The language of the lower court's opinion chastises the State Board for doing its job. The trial judge conceded that the evidence of appellees' misconduct was true and correct; however, he then found the appellees to have been in substantial compliance with the statutes. While substantial compliance may be appropriate in regard to some areas of the law, the test is quite inappropriately applied in this given fact situation. There is no basis for the use of the substantial compliance test. Either the appellees did or did not violate the statutes; and if they did, they can, and must be removed.

"It is textbook law that before an appellate court may overturn the trial court's finding, such finding must be clearly erroneous. CR 52.01" *Rose v. Council for Better Education, Inc.,* Ky., 790 S.W.2d 186, 196 (1989). This Court has often relied on the definition of "clearly erroneous" as set forth in *Yates v. Wilson,* Ky., 339 S.W.2d 458 (1960). "If the findings of fact of a trial court are not sustained by sufficient evidence, under the same test of sufficiency that applies to a jury verdict, they are 'clearly erroneous.'" *Yates* at 464. Because even he conceded that at most there was only substantial compliance with statutes, it is apparent that the trial judge, as a reviewing court, was clearly in error in his rulings.

In oral argument, counsel for Ball, Coleman and Lewis conceded that the payment

---

2. One of many remarks by the trial court directed toward the State Board occurred when the court stated: "To morally comment on this matter after admitting it was not a legal wrongdoing leaves the impression that the tribunal [State Board] is expressing frustration and that this frustration may have left an ugly residue which could have clouded the examination of later considered charges."

for the gasoline storage tanks, as well as the construction of the field house, were both technical violations of KRS 160.160(2) and KRS 162.060. These concessions, along with the trial court's concession that appellees only substantially complied with the statutes, demonstrate the very type of insidious conduct which led to the enactment of KERA. However, the trial court's opinion chided, chastised and criticized the State Board for properly carrying out its duty under KERA. Neither the tenor nor the conclusions of the lower court's opinion comport with the spirit of *Rose* or with KERA. Nor does it comport with our precedents concerning findings of fact.

A summation of the evidence is as follows:

1. FIELD HOUSE CHARGE: Pursuant to KRS 162.060, a district board cannot award a construction contract without the prior approval of the plans by the chief state school officer. The Harlan County Board, including Ball, Coleman and Lewis, awarded such a contract without obtaining the required approval. The Harlan County Board has a statutory duty to ensure that such approval is obtained before a construction contract is awarded.

2. GASOLINE STORAGE TANKS CHARGE: KRS 160.160(2) requires public, competitive bidding on projects of more than ten thousand dollars ($10,000) ($7,500 prior to 1990), unless an emergency is certified as required by law. The Harlan County Board, including Ball, Coleman and Lewis, voted to purchase gasoline storage tanks for a price in excess of ten thousand dollars ($10,000). No competitive bids were sought, nor was an emergency certified as required by law. KRS 160.160(2).

3. PAINT CHARGE AGAINST COLEMAN: KRS 160.180(3) provides for the removal of a district board member who has an interest in the sale of supplies or equipment to the school. Coleman introduced a Progress Paint representative to Harlan County School's assistant maintenance director. As a result of the introduction, Harlan County Schools began to purchase Progress Paint. Coleman received thirty-four hundred dollars ($3,400) of credit from Progress Paint related to the sale of paint to the Harlan County Board.

4. WEIGHT–LIFTING CHARGE AGAINST COLEMAN: KRS 160.180(3) is applicable to this charge as well. Coleman "gave" commercial weight-lifting equipment to his employee Turner in return for the cancellation of a debt owed to Turner by Coleman. Coleman advised Turner how to sell the equipment and avoid the competitive bidding requirement of KRS 160.-160(2). Turner then sold the equipment to the Harlan County Board. During the year and a half that Turner owned the equipment, it never left Coleman's warehouse until it was handed over to the Harlan County Schools.

5. LEXINGTON OFFICE EQUIPMENT CHARGE AGAINST BALL: KRS 160.160(2) is applicable to this charge. The Harlan County Board purchased more than ten thousand dollars ($10,000) worth of equipment from Ball's brother's company. There was no competitive, advertised bidding. Ball attempted, and failed, to have an emergency declared in order to avoid the bidding requirements. The amount quoted for the equipment does not add up to the amount of the two later proffered invoices that Ball contends are for two separate purchases.

"When the findings of fact of an administrative commission are supported by substantial evidence of probative value, the findings are binding upon a reviewing court." *Commonwealth, Department of Education v. Commonwealth*, Ky.App., 798 S.W.2d 464, 467 (1990). "The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 308 (1972).

After an examination of the record, we find that there is no doubt that the State Board presented more than sufficient evidence to find Ball, Coleman and Lewis guilty of the field house charge and the gasoline tanks charge; to find Coleman guilty of the paint charge and the weight-

lifting charge; and to find Ball guilty of the Lexington Office Equipment charge. The findings of fact of the trial judge are clearly erroneous.

Other issues have been raised in this appeal. However, after careful consideration of these issues, we determine that there is no merit to them.

For the foregoing reasons, we reverse the opinion of the Harlan Circuit Court.

LAMBERT, J., not sitting.

COMBS, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., and BUTLER, Special Justice, concur.