RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0668-MR

MARK METCALF, IN HIS OFFICIAL
CAPACITY AS KENTUCKY STATE
TREASURER                                                                          APPELLANT


                        APPEAL FROM FRANKLIN CIRCUIT COURT
v.                      HONORABLE THOMAS D. WINGATE, JUDGE
                        ACTION NO. 23-CI-00298


ANDY BESHEAR, IN HIS OFFICIAL
CAPACITY AS GOVERNOR OF THE
COMMONWEALTH OF KENTUCKY;
HOLLY M. JOHNSON, IN HER
OFFICIAL CAPACITY AS
SECRETARY OF THE FINANCE &
ADMINISTRATION CABINET; KEM
MARSHALL, IN HER OFFICIAL
CAPACITY AS FRANKLIN CIRCUIT
COURT CLERK; LEGISLATIVE
RESEARCH COMMISSION; MARK
HART, IN HIS OFFICIAL CAPACITY
AS CO-CHAIR OF THE
LEGISLATIVE RESEARCH
COMMISSION'S GOVERNMENT
CONTRACT REVIEW COMMITTEE;
AND STEPHEN MEREDITH, IN HIS
OFFICIAL CAPACITY AS CO-CHAIR
OF THE LEGISLATIVE RESEARCH

COMMISSION'S GOVERNMENT
CONTRACT REVIEW COMMITTEE                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  A. JONES, KAREM, AND MᴄNEILL, JUDGES.

KAREM, JUDGE:   This appeal concerns the constitutionality of 2023 House

("HB") 329, which altered the approval process for certain executive branch

contracts by requiring, in some instances, final approval by the Kentucky State

Treasurer instead of the Secretary of the Finance and Administration Cabinet

("Finance Secretary").  The Governor and Finance Secretary challenged HB 329 as

an unconstitutional intrusion on executive authority before the Franklin Circuit

Court.  They argued HB 329 violated the separation of powers and impaired the

Governor's ability to faithfully execute the laws under Section 81 of the Kentucky

Constitution.  They also contended that the law subjected the Governor to the will

of the State Treasurer in violation of Section 69.

The circuit court agreed, granted the Governor's and the Finance

Secretary's motion for summary judgment, declaring the law unconstitutional and

void, and permanently enjoined its enforcement.  The State Treasurer now appeals

that ruling as a matter of right, arguing that HB 329 does not violate the separation

of powers or hinder the Governor's ability to carry out his constitutional duties.  To

the contrary, the State Treasurer contends that HB 329 achieves something long permitted under Kentucky's Constitution – it reallocates executive authority from a gubernatorially-controlled official to another constitutional officer within the executive branch.

Having reviewed the record and being otherwise sufficiently advised, we conclude that HB 329 is unconstitutional. Accordingly, we affirm the judgment of the Franklin Circuit Court.

## I. BACKGROUND

### *A. The Parties*

Governor Andy Beshear ("Governor") is the 63rd Governor of Kentucky. He was elected to his first four-year term in the 2019 gubernatorial election and was reelected to a second term in 2023. He is the "Chief Magistrate" vested with the "supreme executive power of the Commonwealth[.]" KY. CONST. § 69. In his role as Governor, he has a duty to "take care that the laws be faithfully executed." KY. CONST. § 81.

Holly M. Johnson was appointed Secretary of the Finance and Administration Cabinet by Governor Beshear in December 2019. In this role, she serves as the Commonwealth of Kentucky's chief financial officer and manager of its fiscal resources. Pursuant to KRS[1] 42.012, "[t]he secretary of the Finance and

---

[1] Kentucky Revised Statutes.

Administration Cabinet shall be the chief financial officer of the state and the adviser of the Governor and the General Assembly in financial matters, and shall at all times protect the financial interests of the state."

Mark H. Metcalf serves as Kentucky's State Treasurer. He was elected to a four-year term during the 2023 general election and assumed office on January 1, 2024. The State Treasurer is a constitutional officer. The Kentucky Constitution § 91 states, "[a] Treasurer . . . shall be elected by the qualified voters of the State . . . . The duties of [the Treasurer] shall be such as may be prescribed by law."

### B. Passage of Kentucky's Model Procurement Code

In 1978, Kentucky became the first state to adopt model procurement code legislation, codified in KRS Chapter 45A.[2] The enactment of the Kentucky Model Procurement Code ("KMPC") significantly altered public contracting practices by "providing access not previously available to challenge and investigate the propriety of government purchasing contracts." *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet*, 758 S.W.2d 24, 24 (Ky. 1988). As the Kentucky Supreme Court later observed, "[w]ith the enactment of the KMPC, the General Assembly elevated the standard of conduct for the

---

[2] https://onestop.ky.gov/expand/Pages/govprocurements.aspx (last visited Mar. 17, 2025).

Commonwealth's procuring entities[.]" *Commonwealth v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 205 (Ky. 2007).

Under the KMPC, "procurement is now a regulated administrative procedure[.]" *Laboratory Corp. of America Holdings v. Rudolph*, 184 S.W.3d 68, 74 (Ky. App. 2005). In short, the KMPC prescribes the procedures by which Kentucky state government must bid, negotiate, and award contracts.[3] *Landrum v. Commonwealth ex rel. Beshear*, 599 S.W.3d 781, 788 (Ky. 2019). It governs the disposition of state property and applies to every expenditure of public funds by the Commonwealth – including payments made under contingency fee contracts –

---

[3] The underlying purposes and policies of the KMPC are:

(a) To simplify, clarify, and modernize the law governing purchasing by the Commonwealth;

(b) To permit the continued development of purchasing policies and practices;

(c) To make as consistent as possible the purchasing laws among the various states;

(d) To provide for increased public confidence in the procedures followed in public procurement;

(e) To insure the fair and equitable treatment of all persons who deal with the procurement system of the Commonwealth;

(f) To provide increased economy in state procurement activities by fostering effective competition; and

(g) To provide safeguards for the maintenance of a procurement system of quality and integrity.

KRS 45A.010(2).

except for contracts between the Commonwealth and its political subdivisions or other governmental entities. *See* KRS 45A.020.

### C. Establishment of the Government Contract Review Committee under the Legislative Research Commission

The Finance Secretary is authorized to adopt necessary administrative regulations and is expressly charged with "consider[ing] and decid[ing] matters of policy with regard to state procurement." KRS 45A.035. As the Kentucky Supreme Court has explained, "[t]he KMPC thus makes the Finance and Administration Cabinet directly responsible for the promulgation of regulations for procurements by the Commonwealth." *Lassiter v. Landrum*, 610 S.W.3d 242, 248 (Ky. 2020). Nevertheless, since at least 1990, the General Assembly has retained a degree of oversight over state contracting through the Government Contract Review Committee ("GCRC"), a permanent committee of the Legislative Research Commission ("LRC"). *See* KRS 45A.705.[4]

Prior to 2021, all proposed personal service contracts, tax incentive agreements, and memoranda of agreement were to be forwarded to the GCRC for its review. KRS 45A.705 (2009). Upon receipt, the GCRC was tasked with

---

[4] The GCRC is comprised of eight members "appointed as follows: three (3) members of the Senate appointed by the President of the Senate; one (1) member of the minority party in the Senate appointed by the Minority Floor Leader in the Senate; three (3) members of the House of Representatives appointed by the Speaker of the House of Representatives; and one (1) member of the minority party in the House of Representatives appointed by the Minority Floor Leader in the House of Representatives." KRS 45A.705.

evaluating several factors, including: the necessity of the service or benefit, whether the service could or should be performed by state personnel, the amount and duration of the contract, and the appropriateness of any exchange of resources or responsibilities. *Id.* The GCRC was tasked to act within 45 days of the date the contract, agreement, or memorandum of agreement was received. *Id.* If it found that a contract was unnecessary, inappropriate, excessive in amount or duration, or improperly allocated resources or responsibilities, it was required to return the contract to the Finance Secretary with a written explanation of its disapproval or objection. *Id.* Upon receiving the GCRC's objection, the Finance Secretary had the discretion to revise the contract to address the GCRC's concerns, cancel the contract, or allow it to remain effective in its original form. *Id.*

### D. 2021 SB[5] 165

In 2021, through SB 165, the General Assembly enacted the first in a series of changes that significantly altered the review structure established under KRS 45A.705. For the first time, SB 165 eliminated the Finance Secretary's discretion to override the GCRC's disapproval by unilaterally allowing a contract to remain in effect. Under SB 165, if the Finance Secretary declined to revise or cancel a contract that the GCRC had disapproved, the only available recourse was to appeal the matter to the State Treasurer. Upon appeal, the State Treasurer was

---

[5] Senate Bill.

required to make the final determination as to whether the contract should be revised, cancelled, or permitted to remain in effect. *See* KRS 45A.705 (2021).

The constitutionality of SB 165 was promptly challenged in Franklin Circuit Court, which declared the bill invalid on procedural grounds due to the General Assembly's violation of the three-readings requirement of Section 46 of the Kentucky Constitution. Having determined that the legislation was procedurally defective, the circuit court declined to address the remaining substantive and procedural arguments. The circuit court's decision was appealed in *Ball v. Beshear*, No. 2021-CA-0773-MR (Ky. App. Aug. 19, 2022). However, before briefing was completed, the Kentucky General Assembly enacted 2022 House Bill ("HB") 388. Because HB 388 superseded the challenged legislation and rendered the issues on appeal as moot, the appeal was dismissed.[6]

### E. 2022 HB 388

HB 388 was substantively identical to SB 165, with one key exception: it added a caveat that the right to appeal to the State Treasurer did not

---

[6] In addition to requesting dismissal of the appeal as moot, the Treasurer asked this Court to vacate the circuit court's order declaring the statutory amendment procedurally unconstitutional. While we agreed that the appeal was moot, we declined to vacate the circuit court's order. The State Treasurer sought discretionary review, asking the Supreme Court of Kentucky to decide whether, when a lawsuit challenging the constitutionality of a Kentucky statute becomes moot on appeal, the appellate court should also vacate the lower court's judgment. The Supreme Court denied discretionary review by order entered February 8, 2023. *Ball v. Beshear*, No. 2022-SC-0413 (Ky. Feb. 8, 2023).

apply to any contract "based upon the enumerated powers specifically granted to the Governor pursuant to Sections 75, 76, 77, 78, 79, and 80 of the Constitution of Kentucky." KRS 45A.705(6)(b) (2022). For such contracts, if disapproved by the GCRC, the Finance Secretary was limited to either revising or canceling the contract.

The Governor and the Finance Secretary promptly filed suit in Franklin Circuit Court, asserting that HB 388 violated multiple provisions of the Kentucky Constitution.[7] The circuit court agreed, concluding that HB 388 was unconstitutional and void because it violated Sections 26, 27, 28, 69, and 81 of the Kentucky Constitution. In its ruling, the circuit court found that HB 388 impermissibly usurped the Governor's discretion and unconstitutionally restricted his authority to carry out executive duties.

The Attorney General and the State Treasurer appealed the Franklin Circuit Court's decision invalidating HB 388 in *Cameron v. Ball*, No. 2022-CA-1419-MR, 2023 WL 8286690 (Ky. App. Dec. 1, 2023). However, by the time the appeal was fully briefed, but before an opinion was rendered, the General Assembly had enacted 2023 HB 329 attempting to address the concerns expressed in the trial court's order. *Id.* at *4. Accordingly, we dismissed the portion of the

---

[7] Specifically, they argued that HB 388 violated the Kentucky Constitution §§ 26, 27, 28, 69, 75, 76, 77, 78, 79, 80, and 81.

-9-

appeal pertaining to HB 388 and ordered the corresponding portion of the circuit court's order be vacated. The effect of this was to leave KRS 45.705 language, as changed by HB 388, in place.

### F. 2023 HB 329

During its 2023 session, in response to the circuit court's ruling invalidating HB 388 and the subsequent appeal, the General Assembly passed HB 329.[8] Under HB 329, all proposed personal service contracts, tax incentive agreements, and memoranda of agreement submitted to the LRC by the executive department must be reviewed by the GCRC. The GCRC examines several key aspects of each submission: the necessity and benefit of the service or project, whether the work could or should be done by state employees, the amount and duration of the contract, and the appropriateness of any exchange of responsibilities or resources. If the GCRC finds a contract to be unnecessary, inappropriate, excessive in scope or duration, or otherwise problematic, before taking the next step, it must determine the nature of the contract by deciding if it falls within specific constitutional powers of the Governor or an emergency exemption.

---

[8] On March 24, 2023, the Governor vetoed HB 329. The General Assembly overrode the Governor's veto on March 29, 2023, and HB 329 immediately became law due to its emergency clause.

If the GCRC objects to the contract and it does ***not*** fall within specific constitutional powers of the Governor or an emergency exemption – it must forward the contract along with its written, nonbinding recommendations to the State Treasurer. The State Treasurer then decides whether to revise the contract, cancel it (while allowing payment for services rendered), or allow it to remain in effect as submitted. And, while the recommendations of the Committee are non-binding, the only actions allowed by the Finance Cabinet following revisions by the State Treasurer are to either issue the contract with revisions or cancel the contract. Notably, no timeframe for a decision by the State Treasurer was promulgated, nor was an appeals process devised.

For contracts that fall within the Governor's enumerated constitutional powers, or which qualify as emergencies, the GCRC still provides nonbinding recommendations. Those recommendations are returned to the Finance Secretary, not the State Treasurer, who makes the decision whether to revise, cancel, or approve the contract as originally submitted.

The Governor and the Finance Secretary brought suit in Franklin Circuit Court to challenge HB 329.[9] Therein, they alleged that HB 329 violates the

---

[9] In the same suit, the Governor and the Finance Secretary challenged 2023 SB 126, which deals with change of venue in civil actions against certain state officials and actors. 2023 SB 126 is not at issue as part of this appeal.

Kentucky Constitution §§ 26,[10] 27,[11] 28,[12] 29,[13] 36,[14] 42,[15] 69,[16] and 81,[17] and is unconstitutional under existing judicial precedent.[18] (Record (R.) at 4.) The

---

[10] "To guard against transgression of the high powers which we have delegated, We Declare that every thing in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void." KY. CONST. §26.

[11] "The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." KY. CONST. §27.

[12] "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." KY. CONST. §28.

[13] "The legislative power shall be vested in a House of Representatives and a Senate, which, together, shall be styled the 'General Assembly of the Commonwealth of Kentucky.'" KY. CONST. §29.

[14] (1) The General Assembly, in odd-numbered years, shall meet in regular session for a period not to exceed a total of thirty (30) legislative days divided as follows: The General Assembly shall convene for the first part of the session on the first Tuesday after the first Monday in January in odd-numbered years for the purposes of electing legislative leaders, adopting rules of procedure, organizing committees, and introducing and considering legislation. The General Assembly shall then adjourn. The General Assembly shall convene for the second part of the session on the first Tuesday in February of that year. Any legislation introduced but not enacted in the first part of the session shall be carried over into the second part of the session. In any part of the session in an odd-numbered year, no bill raising revenue or appropriating funds shall become a law unless it shall be agreed to by three-fifths of all the members elected to each House.

(2) The General Assembly shall then adjourn until the first Tuesday after the first Monday in January of the following even-numbered years, at which time the General Assembly shall convene in regular session.

(3) All sessions shall be held at the seat of government, except in case of war, insurrection or pestilence, when it may, by

Governor and the Finance Secretary sought a declaration that HB 329 is unconstitutional, void and of no effect. (R. at 30.) Both sides moved for summary judgment as to the constitutionality of HB 329.

The circuit court concluded that even though HB 329 exempted emergency executive branch contracts and contracts related to the Governor's enumerated powers from the State Treasurer's binding review, it was still unconstitutional because it prevented the Governor from fulfilling his duties under Section 81 of the Kentucky Constitution which states, "[the Governor] shall take care that the laws be faithfully executed." Specifically, the circuit court concluded "[t]here is no question that the General Assembly has the authority to shift some executive power between other constitutional officers, however, the General

---

proclamation of the Governor, assemble, for the time being, elsewhere.

KY. CONST. §36.

[15] "The members of the General Assembly shall severally receive from the State Treasury compensation for their services: Provided, No change shall take effect during the session at which it is made; nor shall a session occurring in odd-numbered years extend beyond March 30; nor shall a session of the General Assembly occurring in even-numbered years continue beyond sixty legislative days, nor shall it extend beyond April 15; these limitations as to length of sessions shall not apply to the Senate when sitting as a court of impeachment. A legislative day shall be construed to mean a calendar day, exclusive of Sundays, legal holidays, or any day on which neither House meets." KY. CONST. §42.

[16] "The supreme executive power of the Commonwealth shall be vested in a Chief Magistrate, who shall be styled the 'Governor of the Commonwealth of Kentucky.'" KY. CONST. §69.

[17] "He [the Governor] shall take care that the laws be faithfully executed." KY. CONST. §81.

[18] "[The Governor] shall take care that the laws be faithfully executed." KY. CONST. §81.

-13-

Assembly cannot shift power expressly granted in the Kentucky Constitution to the Governor to another independent constitutional officer." (R. at 480-81.) Because it believed that HB 329 impermissibly did so, it concluded the statute is void. This appeal by Treasurer Metcalf followed.

## II. STANDARD OF REVIEW

Here, the circuit court granted the Governor's and Finance Secretary's motion for summary judgment. "The standard of review on appeal when a [circuit] court grants a motion for summary judgment is 'whether the [circuit] court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010) (quoting *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996)); *see also* CR[19] 56.03. "Because there are no factual issues in dispute and all issues before us concern issues of law, our review is *de novo.*" *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74, 81 (Ky. 2018) (citing *Owen v. Univ. of Ky.*, 486 S.W.3d 266, 269 (Ky. 2016)).

## III. ANALYSIS

The Kentucky Constitution establishes three separate but equal branches of government. "The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be

---

[19] Kentucky Rules of Civil Procedure.

confined to a separate body of magistracy, to wit:  Those which are legislative, to one; those which are executive, to another; and those which are judicial to another."  KY. CONST. §27.  "No person or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."  KY. CONST. §28.  Read together, these sections of the Constitution form the basis of a strong doctrine mandating the separation of powers as described by our highest Court.  "Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what might be termed the American tripod form of government than does our Constitution . . . ."  *Sibert v. Garrett*, 197 Ky. 17, 246 S.W. 455, 457 (1922).  It is a doctrine that is to be strictly construed.  *Legislative Research Comm'n* ["*LRC*"] *By and Through Prather v. Brown*, 664 S.W.2d 907, 912 (Ky. 1984) (citation omitted).  With this premise grounding our analysis, we must determine if HB 329 infringes on the sanctity of this doctrine.

The State Treasurer maintains that HB 329 merely reallocates executive authority from one executive branch officer – the Finance Secretary – to another – the State Treasurer – in a manner expressly permitted under Section 91 of the Kentucky Constitution.  According to the State Treasurer, the statute reflects a proper exercise of the General Assembly's power of the purse and does not

infringe on any of the Governor's enumerated powers. In support of his argument, he cites *Brown v. Barkley*, 628 S.W.2d 616 (Ky. 1982), for the proposition that assigning the responsibility of final determination of contracts to an independent constitutional officer in the executive branch of government is entirely permissible. However, this interpretation of *Barkley* is misguided.

In *Barkley*, the Supreme Court examined the powers of the Governor in relation to an existing statute. The Governor had issued an executive order transferring various functions, personnel, and funds from the Department of Agriculture to another executive agency. *Id.* at 618. The question at the heart of the issue in *Barkley* involved the *Governor's ability* to move functions from one executive agency to another. It was not, as in the case *sub judice*, a question of whether the *General Assembly* can encroach on the supreme powers of the Governor. While the Court found that the executive order was an infringement on the powers of the General Assembly, the Court, in examining the hierarchy of elected and appointed officials, reiterated that "[t]he office of Governor is established by Const. §69, which provides: 'the supreme executive power of the Commonwealth shall be vested in a Chief Magistrate, who shall be styled the 'Governor of the Commonwealth of Kentucky.'" *Id*. at 621. It further opined:

> We do not doubt that if the General Assembly should
> pass a law that requires implementation, and appropriate
> funds for that purpose but omit specifying the manner in
> which it is to be carried out, the chief executive would be

-16-

required to carry it out *and have the right to choose the means by which to do it.* That would not be so because of any implied or inherent power, however, but because it would be within the scope of authority and duty expressly conferred upon him by Const. Sec. 81.

*Id.* at 623 (emphasis added). In the case *sub judice*, the Governor is, in executing contracts for services, merely exercising his inherent right to choose the means by which funds are expended as identified in *Barkley*.

The State Treasurer expanded his argument for the application of *Barkley* by analogizing *Cameron v. Beshear*, 628 S.W.3d 61 (Ky. 2021), to the case at bar. Here, too, the argument is unpersuasive as *Cameron* is easily distinguishable.

In March of 2020, in response to the COVID-19 pandemic, the Governor declared a state of emergency. Subsequently, following a challenge to the Governor's powers, the Court clarified that "the General Assembly could limit the Governor's statutorily-derived emergency powers should it wish to." *Beshear v. Acree*, 615 S.W.3d 780, 812-13 (Ky. 2020). In response to *Acree*, the General Assembly passed legislation, over the Governor's veto, to restrict the Governor's ability to take unilateral action during declared emergencies. *Cameron*, 628 S.W.3d at 66. The Governor and the Secretary of the Cabinet for Health and Family Services, in turn, filed a declaratory action arguing that the legislation unconstitutionally infringed on the Governor's executive powers. They also

-17-

sought and obtained a temporary injunction preventing the legislation from taking effect. In opining on the separation of powers argument, the Court ultimately decided that the legislation was not an unconstitutional infringement on the Governor's powers. Importantly, the Court specifically stated, "[t]he Governor's *final say* over the disposition of any 'deficient' emergency regulations remains intact. Because the executive branch retains final say as to administrative regulations, the 2021 legislation does not violate Sections 27 and 28, or this court's holding in *L.R.C. v. Brown. Cameron v. Beshear*, 628 S.W.3d 61, 75 (Ky. 2021)." *Cameron*, 628 S.W.3d at 75 (emphasis added). The case *sub judice* is dissimilar to *Cameron* in that, here, the General Assembly has removed the final decision-making power from the Governor himself. A more recent, albeit unpublished, case is more in line with the analysis in the case at bar and, thus, is more persuasive.[20]

In *Cameron v. Ball*, No. 2022-CA-1419-MR, 2023 WL 8286690 (Ky. App. Dec. 1, 2023), this Court decided the constitutionality of HB 248 passed during the General Assembly's 2022 Regular Session.[21] HB 248 prohibited

---

[20] The Court is aware of recent cases decided by different panels of this Court, neither of which are final; *Shell v. Beshear*, No. 2021-CA-1459-MR, 2024 WL 1005023 (Ky. App. Mar. 8, 2024), *review granted* (Feb. 13, 2025) (not to be published); and, *Coleman v. Beshear*, No. 2022-CA-0837-MR, 2024 WL 875611, at *13 (Ky. App. Mar. 1, 2024), *review granted* (Feb. 13, 2025) (originally designated to be published).

[21] This Court was also tasked with examining the constitutionality of HB 388, the predecessor to HB 328 which is the subject of this case *sub judice*. The Court dismissed this portion of the appeal as moot.

-18-

constitutional officers elected statewide (with the exception of the Attorney General), and any state official, employee, or agency (with the exception of the Department of Public Advocacy in a criminal matter) from expending appropriated funds to challenge, or support a challenge, to the constitutionality of any legislative act or resolution of the General Assembly.  In declaring HB 248 unconstitutional, the Court stated:

> The General Assembly is not permitted to interfere with the executive's power to administer appropriated funds – including a decision to choose to expend funds to mount a challenge to actions of the General Assembly that he perceives to be unconstitutional.  HB 248 violates the doctrine of separation of powers by attempting to give the General Assembly excessive power to impede the Governor in performing his constitutionally mandated duties.  To hold otherwise would be to disregard and jeopardize the critical balance between and among the **co-equal branches** of government.  To hold otherwise would indeed be a violation of [the judiciary's] sworn duty to preserve, protect, and defend our Constitution. The Kentucky Constitution commits the authority and the duty to run the executive branch to the Governor.  He has an obligation to see that the law is faithfully enforced. In order to do so, he must have the ability and the means to challenge the constitutionality of acts of the General Assembly.  Therefore, we hold that HB 248 is an unconstitutional violation of the doctrine of separation of powers as set forth by Sections 27 and 28 of the Constitution of Kentucky.

*Cameron v. Ball*, No. 2022-CA-1419-MR, 2023 WL 8286690, at *8 (Ky. App. Dec. 1, 2023).

-19-

Similarly, in the case at bar, HB 328 removes the final decision-making power of expending funds by contract from the Governor to the State Treasurer, thereby depriving the Governor of his mandated responsibility to faithfully execute the laws of the State per the Kentucky Constitution. KY. CONST. §81.

We agree with the Governor and the Finance Secretary that HB 329 is unconstitutional to the extent it usurps the Governor's supreme executive power under Section 69 of the Kentucky Constitution, reallocates that power to the State Treasurer, and prevents the Governor from fully executing his duty to faithfully enforce the laws under Section 81 of the Kentucky Constitution. The legislation impermissibly grants a legislative board authority over executive contracts, thereby violating the separation of powers.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Franklin Circuit Court's opinion and order declaring HB 329 unconstitutional and void and permanently enjoining its enforcement.

McNEILL, JUDGE, CONCURS.

JONES, A., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

JONES, A., JUDGE, DISSENTING: Most respectfully, I dissent. In my view, House Bill 329 represents a valid exercise of the General Assembly's

-20-

constitutional authority to structure the expenditure of public funds and to designate the means by which executive branch functions are carried out. The majority's conclusion that HB 329 impermissibly infringes upon the Governor's constitutional powers misapprehends both the nature of Kentucky's non-unitary executive and the scope of the General Assembly's prerogative to assign statutory duties among independently elected constitutional officers. Because HB 329 neither usurps a power *exclusive* to the Governor nor violates the separation of powers, I would reverse the judgment of the Franklin Circuit Court.

### I. Kentucky's Constitution Creates a Non-Unitary Executive, Not a Gubernatorial Monolith

The majority's analysis rests on the flawed foundational premise that "executive power" under Kentucky's Constitution resides solely and exclusively in the Governor. In doing so, the majority conflates the Governor with the executive branch itself, treating any statutory assignment of executive authority to another constitutional officer as a constitutional violation. But that premise simply does not hold under our Constitution or controlling case law.

To begin, Section 69 of the Kentucky Constitution provides that "the supreme executive power of the Commonwealth shall be vested in a Chief Magistrate, who shall be styled the 'Governor of the Commonwealth of Kentucky.'" The majority appears to read this clause as endowing the Governor

with exclusive and overriding control over all executive functions. But our courts have consistently rejected that interpretation.

As the Supreme Court made clear in *Brown v. Barkley*, 628 S.W.2d 616, 622-24 (Ky. 1982) (hereinafter referred to as *Barkley*), Section 69 does not mean that the Governor is entitled to unilaterally control the entire executive apparatus. Rather, Section 69 identifies the Governor as the head of the executive branch, not its sole constitutional actor. In Kentucky's deliberately non-unitary executive system, the General Assembly is empowered to assign executive functions to other constitutional officers created under Section 91, officers who are elected independently and are not subject to the Governor's control. As *Barkley* emphasized, "[i]t is not possible for the General Assembly to create *another* executive officer or officers who will not be subject to [the Governor's] supremacy, but it definitely has the prerogative of withholding executive powers from him by assigning them to these constitutional officers who are not amenable to his supervision and control." 628 S.W.2d at 622 (emphasis added).

In short, Kentucky's executive power is shared among a commonwealth of elected officials. Each of those officials' specific powers must be defined by law, but the Constitution invites the General Assembly to decide which executive official shall carry out which executive functions, so long as no constitutional provision is violated. Indeed, Section 91 offices were created by the

-22-

framers to facilitate this very diffusion of executive authority. *Barkley*, 628 S.W.2d at 624.

In other words, while the Governor is the Commonwealth's Chief Magistrate, his powers are not absolute. The phrase "supreme executive power" signifies the Governor's position within the constitutional hierarchy. It does not give him *carte blanche* control over all executive actions, nor does it preclude the General Assembly from delegating certain *statutory* duties to others. Indeed, as the Court further noted in *Barkley*, "except for those [powers] conferred upon him specifically by the Constitution, [the Governor's] powers . . . are only what the General Assembly chooses to give him." *Id.* at 623-24.

This distinction is crucial because HB 329 does not attempt to strip the Governor of any constitutionally enumerated powers.[22] Rather, it reallocates a statutory duty – contract approval – from one executive official (the Finance Secretary, a gubernatorially-appointed officer) to another (the State Treasurer, a separately elected constitutional officer). That is a delegation of authority wholly within the General Assembly's prerogative under our Constitution.

---

[22] It is essential to distinguish the Governor's enumerated constitutional powers from other executive functions. The Kentucky Constitution confers upon the Governor a finite list of specific powers and duties in Sections 75 through 81. Beyond these seven constitutional functions, *no other executive powers are inherent in the office of Governor*. *Barkley*, 628 S.W.2d at 623.

All this underscores a critical point: outside his constitutionally enumerated sphere, the Governor's authority derives from statute. If a power or function is not conferred on him by the Constitution itself, then it falls within the General Assembly's province to confer, define, regulate, or even withhold by statute. *Commonwealth ex rel. Beshear v. Commonwealth Office of the Governor ex rel. Bevin*, 498 S.W.3d 355, 369 (Ky. 2016) ("The Governor, as the chief executive of this Commonwealth, has only the authority and powers granted to him by the Constitution and the general law."); *Barkley*, 628 S.W.2d at 623.

The majority's contrary reading fails to grapple with this bedrock structural reality. It assumes that once the General Assembly assigns a statutory duty to an executive officer under gubernatorial control, that duty becomes permanently and exclusively part of the Governor's domain. That is not the law. The General Assembly is free to reassign statutory duties among constitutional executive officers as it sees fit, so long as it does not divest the Governor of a power granted to him directly by the Constitution itself. HB 329 does no such thing.

### II. House Bill 329 Does Not Interfere with the Governor's Duty to Faithfully Execute the Laws

The majority also rests its holding on Section 81 of the Kentucky Constitution, which provides that the Governor "shall take care that the laws be

-24-

faithfully executed." But this provision is a directive, not a reservoir of implied executive authority. It imposes a constitutional duty, not a constitutional veto. As the Kentucky Supreme Court has repeatedly held, Section 81 does not authorize the Governor to override or reshape statutory frameworks with which he disagrees. It simply requires that he execute the laws as enacted by the General Assembly, using the tools and authority that have been lawfully conferred on him by the Constitution or by statute. *Barkley*, 628 S.W.2d at 623-24; *Commonwealth ex rel. Beshear v. Bevin*, 575 S.W.3d 673, 684 (Ky. 2019). Far from guaranteeing the Governor control over every executive mechanism, Section 81 obligates him to carry out the laws as written, even those he would not have enacted himself.

HB 329 does not prohibit the Governor from initiating contracts, allocating resources, or supervising the Finance and Administration Cabinet. It simply assigns the final approval authority for certain contracts to the State Treasurer following nonbinding recommendations from a legislative oversight committee. That framework may be inconvenient or disagreeable to the Governor's preferences, but it is not unconstitutional.

Indeed, if Section 81 required that the Governor retain sole control over every administrative mechanism that contributes to the execution of law, then countless statutes assigning authority to other executive officials would be called into question. Section 81 cannot be read so broadly. The Governor's duty under

Section 81 is to execute the law as it exists, which now means executing it in partnership with the State Treasurer's oversight in specified cases. There is no constitutional duty for the Governor to have sole personal control over contracting, and Section 81 certainly confers no such autarkic power.

Except where the Constitution itself speaks, the Governor's role in executing the laws is defined by what the General Assembly has seen fit to provide by statute. *Barkley*, 628 S.W.2d at 623 ("[I]f it be postulated that the chief executive does possess implied or 'inherent' powers, they would be subordinate to statute."); *Franks v. Smith*, 134 S.W. 484, 487 (Ky. 1911). In other words, Section 81 does not enlarge the Governor's toolkit; it simply requires diligence in carrying out the law using whatever authority the Constitution or Legislature has provided.

In sum, Section 81 requires that the Governor faithfully execute the laws. It does not entitle him to rewrite them, override them, or reclaim functions the General Assembly has assigned elsewhere. Because HB 329 leaves intact the Governor's ability to carry out his duties, it does not offend Section 81.

### III. HB 329 Reflects a Valid Exercise of the General Assembly's Authority to Structure Executive Functions and Control Public Expenditures

The General Assembly, holding the legislative power of the Commonwealth (KY. CONST. § 29), has not only the right to make laws but also considerable discretion in determining *how* those laws will be executed and by

-26-

whom. *Commonwealth ex rel. Meredith v. Johnson*, 166 S.W.2d 409, 412 (Ky. 1942). Of course, the Legislature cannot delegate its core power to make law. It may not, for example, turn over to another body the authority to enact a statute or decide fundamental policy. *Bloemer v. Turner*, 137 S.W.2d 387, 391 (Ky. 1939). But it is perfectly constitutional for the Legislature to delegate to executive agents the authority to carry out the laws and to make subsidiary decisions in applying the Legislature's policies. *State Bd. for Elementary and Secondary Educ. v. Ball*, 847 S.W.2d 743, 745 (Ky. 1993). As the Kentucky Supreme Court succinctly stated, "while the General Assembly cannot delegate its power to make laws, it can lawfully delegate the power to exercise administrative discretion in applying law[s]." *Id.* In short, the General Assembly can set the policy and entrust the execution of that policy to others. Indeed, modern government could not function if it did not. When the General Assembly delegates implementation authority, it must provide adequate standards to guide that discretion. *Johnson v. Commonwealth*, 165 S.W.2d 820, 825 (Ky. 1942).

Importantly, nothing in Kentucky's separation-of-powers doctrine forbids the Legislature from choosing which executive officer will exercise a given executive function. On the contrary, the courts have noted that when a law is passed, "[i]t may be carried into operation by the executive alone . . . or by the judiciary, or by the co-operation of the judiciary and the executive." *Slack v.*

-27-

*Maysville & L.R. Co.*, 52 Ky. 1, 22 (1852). But the Legislature is not restricted to these agencies. *Id.* The General Assembly thus has wide latitude in structuring the executive branch's implementation of the laws, so long as it does not itself usurp executive functions. Importantly, legislatively delegating an executive function to an *executive branch official* is wholly consistent with separation of powers. Indeed, it is the *intended mechanism* by which the lLgislature and executive cooperate.

The Legislature may decide, for example, that a particular function should be performed by the State Treasurer rather than by the Governor's subordinates, or by an independent agency rather than by the Governor himself. When it does so, that is not a legislative encroachment on executive power. It is an exercise of the Legislature's constitutional prerogative to organize the executive branch. As *Ex parte Auditor of Public Accounts*, 609 S.W.2d 682, 686 (Ky. 1980), explains, the Section 91 offices are created by the Constitution but "their powers are to be prescribed by law," and thus a grant of authority to a Section 91 officer is valid so long as the Legislature itself has the constitutional authority to confer that power. In other words, the General Assembly cannot use a Section 91 officer to do something it could not do directly (for example, enact a law in violation of the Bill of Rights), but it can certainly confer any *executive* function that the Constitution does not reserve exclusively to another official.

There can be no doubt that the General Assembly acted within its constitutional authority when it enacted the Kentucky Model Procurement Code. The General Assembly's authority to regulate state procurement flows directly from its constitutional power over appropriations and the structure of state government. Section 230 of the Kentucky Constitution prohibits the expenditure of public funds except as appropriated by law, thereby placing the "power of the purse" squarely in the hands of the Legislature. *Coppage Construction Company, Inc. v. Sanitation District No. 1*, 459 S.W.3d 855, 866 (Ky. 2015) ("The people of Kentucky, through § 230 of the Kentucky Constitution, have invested in the General Assembly with the legislative power to appropriate funds from the public purse."). Likewise, "[t]he establishment of public policy is granted to the legislature alone." *Commonwealth ex rel. Cowan v. Wilkinson*, 828 S.W.2d 610, 614 (Ky. 1992), *overruled on other grounds by Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152 (Ky. 2009). In furtherance of this authority, the Legislature may impose conditions, procedures, and oversight mechanisms on how public funds are spent – including through the adoption of comprehensive procurement frameworks like the KMPC. "[W]ith the enactment of the KMPC, the General Assembly elevated the standard of conduct for the Commonwealth's procuring entities[.]" *Yamaha Motor Mfg. Corp.*, 237 S.W.3d at 205.

As part of the KMPC framework, HB 329's subject matter – approval of contracts involving the expenditure of public funds – falls squarely within the legislative branch's sphere of control. HB 329 regulates the approval of contracts that commit public funds, ensuring that taxpayer money is spent appropriately as defined by the policies set forth by the General Assembly. The Legislature has an inherent interest in overseeing expenditures – an interest rooted in Section 230 of the Constitution's mandate that no funds leave the treasury without legislative authorization. This legislative oversight is not only permissible but constitutionally grounded. By conditioning the expenditure of public funds on certain approval mechanisms, the General Assembly does not usurp executive power but instead exercises its core constitutional function. The Kentucky Constitution authorizes the Legislature to determine how and when public monies may be spent, and HB 329 reflects a policy choice about how to structure that process. So long as the law does not prevent the executive branch from carrying out its constitutional duties or infringe upon powers exclusively reserved to the Governor, such statutory frameworks represent a valid and enforceable exercise of legislative authority.

HB 329 keeps the legislative branch in its proper oversight role, while ultimate enforcement of the law remains squarely in executive hands. An executive branch official always has the final say on whether an executive branch

-30-

contract goes forward. There is no point at which a committee of legislators can unilaterally terminate or suspend a contract's effectiveness. The Legislature has not given the GCRC (or any legislative body) the power to execute or administer contracts; it has given that power to an executive officer, either the Finance Secretary or the State Treasurer. The GCRC's involvement is a classic oversight function: gathering information, reviewing expenditures, and flagging potential problems for the executive branch to address. This falls well within the Legislature's constitutional role of monitoring government operations and ensuring its laws are followed. But once the GCRC has made its recommendation, its role ends – there is no legislative veto or continuing control. The decision-making authority at that point lies with either the Finance Secretary or the State Treasurer.

In my opinion, HB 329 shows careful respect for the Governor's constitutionally vested powers. The General Assembly included in the statute an explicit exception for any contracts involving the Governor's enumerated constitutional powers or his emergency powers. In other words, if a contract is related to the Governor's Section 75-80 functions (such as military affairs or extradition, for example), or if it is an emergency contract necessitated by a sudden crisis, the new review process does not apply. This carve-out underscores that the Legislature was attentive to the constitutional boundaries. It deliberately left

untouched any area that might implicate the Governor's core constitutional responsibilities.

HB 329's requirement of additional review by the State Treasurer for certain contracts reflects the General Assembly's policy judgment on how best to safeguard the public purse. This type of fiscal oversight lies at the heart of the legislative function. Indeed, the Kentucky Supreme Court has made clear that the Governor possesses no independent authority to spend or obligate public funds beyond what the General Assembly has expressly appropriated or authorized by law. *Fletcher v. Commonwealth ex rel. Stumbo*, 163 S.W.3d 852, 869 (Ky. 2005). Ensuring compliance with such legislative constraints does not constitute an encroachment on executive power. It affirms the Legislature's constitutional prerogative over public finances and its authority to define the Commonwealth's public policy with respect to state contracting. HB 329 furthers those objectives by requiring non-emergency executive branch contracts for services and programs, outside the Governor's enumerated powers, to undergo review by an executive official who operates independently of the Governor's administration.[23] Such a

---

[23] Appellees cite *Opinion of the Justices*, 892 So. 2d 332 (Ala. 2004), to support their claim that HB 329 unconstitutionally interferes with the Governor's ability to carry out his duty under Section 81 of the Kentucky Constitution. While *Opinion of the Justices* involved a bill mandating review of certain executive contracts, the review structure proposed by the Alabama Legislature is markedly different from HB 329. The bill in *Opinion of the Justices* required legislative approval of certain executive level contracts but "effectively delegate[d] that function, when the Legislature is not in session, to the sole discretion of the legislative council." *Id.* at

check cannot reasonably be characterized as a violation of separation of powers when it reflects the very balance the Constitution envisions in matters of public spending.

Critically, HB 329 does *not* divest the Governor of any power that the Constitution *itself* confers upon him. As explained, the authority to approve or disapprove state contracts is not among the Governor's enumerated constitutional powers. There is no constitutional provision saying, for example, "the Governor shall have the power to approve all state contracts." It is a function assigned by statute (the procurement code). Accordingly, when the Legislature decided to reallocate executive authority from the Finance Secretary, an executive branch official in the Governor's administration, to an independent executive officer, Kentucky's State Treasurer, it was acting within its constitutional design. *Barkley*, 628 S.W.2d at 624.

The Constitution's separation-of-powers clauses do not guarantee the Governor *absolute control* over every executive function; they only guarantee that *some* executive official will execute the laws, and that the Legislature will not execute them itself. Here, the law is still executed by an executive official – the State Treasurer – instead of a gubernatorial appointee. This kind of intra-executive

---

337. In contrast, under HB 329, final decision-making authority lies solely within the executive department – either the Finance Secretary or the State Treasurer.

reallocation has long been allowed under Kentucky's Constitution, as evidenced by the very existence of independent constitutional officers and decades of legislation assigning them duties. *Barkley*, 628 S.W.2d at 624.

In conclusion, I believe the majority's opinion departs from the text, structure, and settled interpretation of the Kentucky Constitution. It elevates the Governor's preferences over the General Assembly's express authority to structure the execution of law and control public expenditures. In doing so, it undermines the deliberate design of our non-unitary executive and disregards longstanding precedent confirming the General Assembly's prerogative to assign executive functions among constitutional officers.

House Bill 329 does not invade the Governor's constitutional domain. It does not hinder his ability to carry out his duties or nullify any enumerated power. It simply reallocates a statutory responsibility from a gubernatorially-appointed officer to an independently elected constitutional officer in a manner consistent with both separation of powers and our constitutional framework. It may well be a political shift, but it is not a constitutional violation.

We are not arbiters of policy. We are guardians of the Constitution. And when no express constitutional command has been violated, our duty is to respect the choices made by the people's elected representatives in the General Assembly. Because I believe HB 329 is constitutional, I respectfully dissent.

BRIEFS FOR APPELLANT:

Lorran Hart Ferguson
Brittany J. Warford
Office of the Treasurer
Frankfort, Kentucky

Matthew F. Kuhn
Harrison Gray Kilgore
Alexander Y. Magera
Office of the Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEES
GOVERNOR ANDY BESHEAR
AND SECRETARY HOLLY M.
JOHNSON:

S. Travis Mayo
Taylor Payne
Laura C. Tipton
Office of the Governor
Frankfort, Kentucky

Brian C. Thomas
Office of General Counsel
Finance & Administration Cabinet
Frankfort, Kentucky

Mitchel T. Denham
Louisville, Kentucky